1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
RAUL ANCHONDO,                              )
                                                          )     Case No. C15-1070RSL
                              Petitioner,         )
                                                          )
         v.                                               )
                                                          )     ORDER DENYING PETITIONER'S
UNITED STATES OF AMERICA,         )     MOTION UNDER 28 U.S.C. § 2255
                                                          )
                              Respondent.      )
_____)

         This matter comes before the Court on petitioner Raul Anchondo's "Motion to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody: 28 U.S.C. § 2255."  Dkt. # 1.

Having reviewed the memoranda and record, the Court finds as follows:

**BACKGROUND**

         In 2011, federal agents began an investigation after being approached by Brett Karch.  In

April of 2011, Karch had told a step-uncle, Pascual Valenzuela, that he wanted to make some

money by selling two firearms.  Valenzuela, a member of an organization headed by the

Berrelleza-Verduzco family, facilitated the transaction.  While completing the sale outside of

Seattle, Karch met several Berrelleza-Verduzco organization members and was asked to travel to

Texas in order to purchase two additional firearms and bring them to a man named "Raul," in

Phoenix.  Although Karch agreed and eventually delivered the firearms, he started to have

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

second thoughts.

Towards the end of May 2011, Karch informed officials in Texas about what he had done and learned.  He immediately began assisting them with a multi-phase investigation into what turned out to be a sizeable Berrelleza-Verduzco drug smuggling operation involved largely in Phoenix and Washington.  As part of the operation, low-level members were required to man various stash houses in Phoenix, where guns, drugs, and money were stored.  Those members would drive the contraband back and forth between Phoenix and Washington, allowing the organization to provide drugs to downstream buyers.  Karch and two other Berrelleza-Verduzco members identified Raul, also known as "Pecce" (petitioner Anchondo), as someone who both manned a stash house and occasionally drove the organization's shipments.

In March of 2012, prosecutors indicted petitioner and 33 other individuals involved in the Berrelleza-Verduzco operation.  Petitioner's repeated difficulties with his appointed counsel resulted in two of them filing motions to withdraw, Dkt. ## 387, 618, while petitioner's third appointed attorney, David Hammerstad, lasted through trial before requesting his own withdrawal.[1]  Dkt. # 981.  At trial, the jury heard the evidence described above, including testimony by informant Karch and co-conspirators Ernesto Soto and Alma Casillas-Garcia, identifying petitioner as taking part in the Berrelleza-Verduzco conspiracy.  The co-conspirators, also low-level members of the organization, had either worked with petitioner at stash houses in Phoenix or driven with him between Arizona and Washington.  Petitioner was ultimately found guilty of (1) conspiracy to distribute heroin and/or methamphetamine, (2) conspiracy to possess firearms in furtherance of a drug trafficking crime, and (3) possession of firearms in furtherance of a drug trafficking crime.  After the verdict, petitioner filed a motion to enforce a pre-trial plea agreement and for ineffective assistance of counsel.  This Court denied that motion and that

---

[1] An additional appointed attorney was allowed to withdraw for logistical reasons.  Dkt. # 648.

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

-2-

1   decision was affirmed on appeal.   United States v. Anchondo, 588 F. App'x 598 (9th Cir. 2014)

2   (mem.).  Petitioner then filed this timely § 2255 petition.

## DISCUSSION

3   Pursuant to 28 U.S.C. § 2255, prisoners in custody may move for review of their sentence

4   on the basis that their conviction resulted from a denial or infringement of their constitutional

5   rights.  The Court will then review the motion and associated files and records to determine

6   whether the petitioner's claim warrants an evidentiary hearing.  28 U.S.C. § 2255(b).  To be

7   entitled to a hearing, petitioner must allege specific and credible facts that, if true, would entitle

8   him to habeas relief.  United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).  The Court

9   may refuse to hold a hearing if a claim is "so palpably incredible or patently frivolous as to

10  warrant summary dismissal."  United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).

11  In his petition, Mr. Anchondo raises two categories of issues. The first is that prosecutors

12  engaged in misconduct both by failing to accept his guilty plea and by engaging in inappropriate

13  courtroom tactics.  The second is that he received ineffective assistance by his trial counsel,

14  David Hammerstad, both during plea negotiations and in Mr. Hammerstad's investigation and

15  litigation of petitioner's case.

## I.   Prosecutorial Misconduct

16  Although petitioner raised prosecutorial misconduct as a ground for relief in his initial

17  § 2255 petition, he neither raised this issue on direct appeal, see Anchondo, 588 F. App'x 598,

18  nor responded to the government's assertion that his omission on appeal constituted a waiver.

19  Dkt. # 6 at 9-10.  In the context of a § 2255 petition, the general rule is that "[p]etitioners waive

20  the right to object in collateral proceedings unless they make a proper objection before the

21  district court or in a direct appeal from the sentencing decision."  United States v. McMullen, 98

22  F.3d 1155, 1157 (9th Cir. 1996).  Petitioner has not shown the required cause or prejudice to

23  justify his bringing a prosecutorial misconduct claim in this petition for the first time.  See

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

1   <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).  Petitioner's silence on this issue both on

2   direct appeal and in his reply brief is treated as a forfeiture of the claim.

3   **II.   Ineffective Assistance of Counsel**

4   Petitioner further claims that his Sixth Amendment rights were violated by ineffective

5   representation provided by his attorney both prior to trial – i.e. during plea negotiations – and

6   during trial.  The question at this stage is whether petitioner's claims may be dismissed without a

7   hearing, which "is required only where counsel's competence or loyalty is placed in question by

8   substantial allegations of fact."  <u>Diamond v. United States</u>, 432 F.2d 35, 38 (9th Cir. 1970).

9   **A.      Assistance During Plea Negotiations**

10   Petitioner asserts his attorney both failed to adequately inform him of the contents of plea

11   offers and was negligent in waiting to notify the government that petitioner had accepted those

12   offers.  Dkt. # 12 at 6-7.  Petitioner already raised this issue before this Court and subsequently

13   appealed this Court's ruling.  The appeals court held that petitioner had "failed to show deficient

14   performance and/or prejudice in his ineffective assistance of counsel claims."  <u>Anchondo</u>, 588 F.

15   App'x at 599.  Petitioner presents no reason to reconsider that determination, and the same claim

16   cannot be raised again.  <u>Paige v. United States</u>, 456 F.2d 1278 (9th Cir. 1972).  Petitioner's

17   petition on this issue is denied.

18   **B.      Assistance Before and During Trial**

19   Mr. Anchondo's petition claiming ineffective assistance of counsel was supported with

20   predominately conclusory statements that were supplemented and expanded in his reply brief.

21   Ninth Circuit precedent, however, requires parties to argue all matters in their opening brief or

22   petition unless an exception applies.  <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1049 (9th Cir. 2003).

23   Those exceptions include if there was good cause for why the argument was not raised, if the

24   argument was raised by an opposing party, or if failure to raise the issue did not prejudice the

25   opposing party.  <u>See id.</u> (applying good cause exception to pro se plaintiff's new argument).

26   ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

Because none of the exceptions apply to this case, Mr. Anchondo's failure to include in his petition facts supporting his claim of ineffective assistance would alone provide a basis to deny a hearing. <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Even considering the totality of allegations made in Mr. Anchondo's petition and reply, including allegations the government had no opportunity to respond to, there is insufficient basis to grant a hearing.

As a threshold matter, although petitioner did not present these claims on direct appeal, the Supreme Court has recognized an exception to the appeal requirement for ineffective assistance claims. <u>Massaro</u>, 538 U.S. at 504. When reviewing an ineffectiveness claim, "[j]udicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To show ineffective assistance, petitioner must demonstrate (1) that his trial counsel made objectively unreasonable errors and (2) that there is a reasonable probability that those errors prejudiced the proceedings. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 669. Under the second <u>Strickland</u> prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Id.</u> at 691.

### i.   Defense Counsel's Investigation and Trial Presentation

Petitioner's first contention is that two individuals – Pascual Valenzuela and Victor Berelleza-Verduzco – should have testified at his trial and that a bill of sale for a car registered to petitioner should have been introduced into evidence. Petitioner claims that his attorney's failure to use this exculpatory testimony and evidence was the result of an insufficient investigation into petitioner's innocence.

When evaluating petitioner's claims, "a particular decision not to investigate must be

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691.  Relevant to this reasonableness determination is the information provided by the defendant, <u>id.</u>, as well as the nature and strength of the government's case.  <u>Johnson v. Baldwin</u>, 114 F.3d 835, 838 (9th Cir. 1997).  If the ineffectiveness involved a failure to call a witness, the burden is on petitioner to show by a preponderance of the evidence that the witness would have actually testified, that the testimony would have been as petitioner suggests, and that there is a reasonable probability that the testimony would have led to a more favorable result.  <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003) (citing <u>Strickland</u>, 466 U.S. at 694).

Even assuming the proposed witnesses were likely to testify as petitioner suggests, it is unlikely that the absence of their testimony affected the proceeding's outcome.  Petitioner's guilt was primarily established through the testimony of a government informant and two members of the Berelleza-Verduzco organization.  Mr. Valenzuela was relevant to the government's case in that he provided his step-nephew Bret Karch, the soon-to-be government informant, with a phone number for "Raul."  <u>United States v. Anchondo</u>, 12-cr-00062-RSL, Dkt. # 1248 at 114.  When Karch called this number, he talked to someone that identified himself as "Raul."  <u>Id.</u> at 115.  Karch later saw "Raul" at a Berelleza-Verduzco stash house and identified him at trial as petitioner Anchondo.  Mr. Valenzuela's proposed testimony – that he "really did not know the defendant," Dkt. # 12 at 10 – does not establish petitioner's innocence or further any defense.  Whether Mr. Valenzuela personally knew petitioner well is irrelevant to testimony by Karch and other government witnesses who talked to, saw, and worked with petitioner in connection with illegal activities.

Even less likely to have altered the outcome of the trial is petitioner's proposed testimony by Victor Berelleza-Verduzco.  Although Berelleza-Verduzco played an important role in the Berelleza-Verduzco organization, he came up only tangentially during testimony at trial.  His

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

proposed testimony that "Anchondo did not have any knowledge of the alleged conspiracy" and was "just an acquaintance and not a co-conspirator," Dkt. # 12-1 at 54, is made up of conclusory statements that lack exculpatory value.  See also Steele v. United States, 362 F.2d 536, 537 (10th Cir. 1966) ("It was not incumbent upon the [trial] court to conduct an evidentiary hearing on the mere chance that, if called, the witness would testify to any facts which would substantially affect the regularity or integrity of the jury trial pursuant to which petitioner was sentenced."). Trial counsel's omission of these two witnesses does not place the trial's outcome in any serious doubt.  Petitioner's links to the organization were independent of any relationship he may or may not have had with the would-be witnesses, and their proposed testimony would have done little to rebut the substantive factual allegations made at trial.

Petitioner also argues that testimony elicited by the government, connecting petitioner to the conspiracy through a yellow H3 Hummer registered in petitioner's name, could have been discredited.  Petitioner asserts that he had sold the vehicle to "co-defendant Berelleza [sic]," that he told his attorney about the sale, and that a bill of sale should have been introduced at trial. Dkt. # 12 at 10.  Evidence of this transaction, however, does little to distance petitioner from the Berelleza-Verduzco conspiracy.  At trial, the government introduced several witnesses that connected petitioner to the H3 and the H3 to the drug smuggling, including one who stated that members would "just put[] a car under [their] name" so that it could be properly registered and then used by the organization.  Anchondo, 12-cr-00062-RSL, Dkt. # 1249 at 85.  Mr. Hammerstad's choice not to bring up the bill of sale at trial does not put the trial's outcome in doubt, and may have been a strategic choice not to introduce evidence that could be seen to further connect petitioner with the conspiracy.

Petitioner's complaints about his attorney's trial strategy do not suggest that Mr. Hammerstad made any unreasonable errors, much less that those errors resulted in a questionable jury verdict.  The petition on this issue is denied.

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

1

### ii.    Defense Counsel's Courtroom Representation

2      Petitioner's second claim, broadly stated, is that his attorney "failed to exploit"

3   weaknesses in the government's case by objecting to the government's questioning and

4   statements.  In one instance, petitioner alleges that his attorney failed to "object to the

5   government's misconduct" when a government witness had trouble pointing out petitioner in the

6   courtroom.  Dkt. # 12 at 13.  In another, a witness identified petitioner's voice in a recording

7   despite petitioner's characterization that "voices in the recording were unidentifiable."  Id. at 14.

8   Petitioner claims the only way the witness could have identified petitioner's voice was for the

9   government to have informed the witness beforehand, and that his attorney was ineffective for

10   failing to object to improper witness "coaching."  Id.  In a third instance, petitioner would have

11   had Mr. Hammerstad object to the prosecution's "twist[ing of] the record" during closing

12   arguments, when the prosecutor made statements petitioner suggests were inconsistent.  Id. at 15.

13      Petitioner's claim of ineffective assistance in these situations results from a

14   misunderstanding of trial procedure.  In the first two situations, rather than make evidentiary

15   objections, petitioner's attorney used questions during cross examination to highlight the same

16   issues petitioner brings up now.  See Anchondo, 12-cr-00062-RSL, Dkt. # 1248 at 204-06

17   (questioning witness about difficulty identifying defendant); id., Dkt. # 1249 at 79-81

18   (questioning witness about recording quality).  With respect to the third issue, factual

19   inconsistencies in the prosecution's case are appropriate for the jury to consider and weigh and

20   for the defense to bring out on cross examination.  A review of the trial transcript shows that Mr.

21   Hammerstad brought the potential for inconsistencies and inaccurate testimony to the jury's

22   attention, allowing them to accept or reject the prosecution's factual account.  See, e.g., id., Dkt.

23   # 1253 at 36-40 (highlighting prosecution witnesses' motive to support prosecution's narrative).

24      Petitioner's complaints about his representation at trial do not suggest that his counsel

25   made serious errors and do not place the trial's outcome in doubt; his petition on this issue is

26

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

denied.

### iii.    Defense Counsel's Relationship with Petitioner

Petitioner alleges that during the course of his relationship with defense counsel, their attorney-client relationship deteriorated into "irreconcilable conflict."  Dkt. # 12 at 16.  This conflict allegedly resulted in the two men fighting and counsel using profane language, the withholding of evidence from petitioner, and a lack of communication leading up to trial.

The Ninth Circuit has recognized that a defendant's Sixth Amendment right to counsel "means more than just the opportunity to be physically accompanied by a person privileged to practice law."  Frazier v. United States, 18 F.3 778, 782 (1994) (citing Strickland, 466 U.S. at 685).  In extreme situations, the risk that "[defense] counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" has the effect of "mak[ing] the adversary process itself presumptively unreliable."  United States v. Cronic, 466 U.S. 648, 659 (1984).  In those cases, exceptionally unreasonable attorney conduct results in a presumption of prejudice under the second Strickland prong.  Id.  Examples include racial slurs in Frazier, 18 F.3 at 780 ("Mr. Frazer claimed in his motion that his appointed trial attorney had called him a 'stupid nigger son of a bitch and said he hopes I get life.'"); a spineless closing argument in United States v. Swanson, 943 F.2d 1070, 1071 (9th Cir. 1991) ("I am not trying to raise reasonable doubt now, because again I don't want to insult your intelligence."); and an attorney's courtroom dozing in United States v. Moore, 87 F. App'x 668, 670 (9th Cir. 2004) ("[Petitioner] can prevail by showing that his attorney slept during substantial portions of the trial . . . .").

Not all attorney-client conflicts, however, are significant enough to support an ineffective assistance claim.  The Supreme Court has noted that there exists no Sixth Amendment right to a "meaningful attorney-client relationship."  Morris v. Slappy, 461 U.S. 1, 3-4 (1983).  In the related context of an appointed attorney's motion to withdraw, substitution of new counsel must be justified by more than a conflict "based solely on disputes regarding trial tactics."  United

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

States v. Carter, 560 F.3d 1107, 1113 (9th Cir. 2009) (quotation marks and citation omitted). Courts have found withdrawal justified where there has been "a serious breach of trust and a significant breakdown in communication."  United States v. Adelzo-Gonzalez, 268 F.3d 772, 779 (9th Cir. 2001) (finding substitution warranted after defendant relayed threats made by his attorney and attorney twice accused defendant of lying).

In this case, not only are petitioner's allegations either unsupported or contradicted by the record, but Mr. Hammerstad's representation did not approach the gross deviations from standard practice outlined above.  As previously noted, Mr. Hammerstad's courtroom advocacy was competent enough for petitioner to parrot his former attorney's arguments in his brief supporting this petition.  See, e.g., Dkt. # 12 at 13 (citing defense counsel's cross examination favorably); id. at 14 (same).  In addition, Mr. Hammerstad appears to have made considerable attempts to ensure petitioner had an opportunity to discuss and accept an eleventh-hour plea deal, which petitioner previously attempted to have reinstated in this Court.  See Dkt. # 12-1 at 49 (noting that Mr. Hammerstad met with petitioner on April 16th, 23rd, 24th, and 25th, leading up to an April 25th plea deadline).  Petitioner does not deny that these meetings took place, but nonetheless asserts that his attorney cut off communication "for weeks, at times months."  Dkt. # 12 at 16.  Petitioner does not suggest when this occurred, and the only substantive support for this assertion is a piece of mail he sent on April 23rd that was returned as refused on April 25th. Dkt. # 12-1 at 53.  Regardless of whether Mr. Hammerstad refused this mail out of spite for his client, as petitioner suggests, the two of them met in person at least three times over that period. Mr. Hammerstad's communication during this critical time was hardly deficient.  Finally, although petitioner claims that Mr. Hammerstad shouted at him, called him offensive names, and on one occasion did not provide him with enough time to review discovery documents, he mentions nothing about when these events occurred or what was said. Dkt. # 12 at 16.  Without more, these bald statements do not amount to the "substantial allegations of fact" required to

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255

-10-

hold an evidentiary hearing.  See Diamond, 432 F.2d at 38.  Because petitioner's claims lack the support necessary to demonstrate that Mr. Hammerstad acted unreasonably, his petition on this issue is denied.

**III.    Certificate of Appealability**

A petitioner may appeal the district court's decision dismissing his § 2255 motion only after obtaining a certificate of appealability.  The Court is required to issue or deny a certificate of appealability when it enters a final order denying petitioner's motion. Rules Governing Section 2255 Proceedings for the U.S. Dist. Cts., R. 11.  If petitioner makes "a substantial showing of the denial of a constitutional right," the Court may issue the certificate.  28 U.S.C. § 2253(c)(2).  The record must demonstrate "that jurists of reason could disagree with the district court's resolution of [petitioner's] case or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  As set forth above, there is substantial evidence of petitioner's guilt.  Because there can be no reasonable disagreement with this conclusion, petitioner is not entitled to a certificate of appealability.

For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 is DENIED.  Petitioner is DENIED a certificate of appealability under 28 U.S.C. § 2253.

DATED this 19th day of May, 2016.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION
UNDER 28 U.S.C. § 2255